Argued November 29, 1972, affirmed February 12, petition for
rehearing denied March 15, petition for review denied
June 12, 1973

# STATE OF OREGON, *Appellant, v.* WALTER HARRIS GWINN (No. 1082), *Respondent.*

506 P2d 187

*Jesse R. Himmelsbach, Jr.,* District Attorney, Baker, argued the cause and filed the briefs for appellant.

*Harold Banta,* Baker, argued the cause for respondent. With him on the brief were Banta, Silven, Young & Marlette, Baker.

Before Schwab, Chief Judge, and Langtry and Thornton, Judges.

LANGTRY, J.

The defendant was indicted under ORS 474.020(1) for unlawful possession of marihuana in November 1971. He moved for suppression of marihuana seized in searches by police officers which he claims were unreasonable. The trial court denied the motion with reference to a baggie of marihuana which was taken from defendant's person in a search at the state police office when he was taken there after his arrest on a state highway outside Baker, Oregon. The motion was sustained as to 25 two-pound bricks of marihuana which were taken from defendant's vehicle pursuant to a search warrant which was obtained the morning after defendant's arrest. The state has appealed pursuant to ORS 138.060(4) from the part of the order which suppressed the latter evidence. The defendant cannot appeal at this juncture from the other part of the order which denied his motion as to the baggie of marihuana. ORS 138.040.

Preceding arrest, the police officer had become curious about the defendant and his vehicle which he observed at night upon the highway when it came up,

behind his police vehicle, and then dropped back. He stopped defendant, asking to check his operator's license. The defendant produced a valid and current Oregon operator's license. The officer asked for the registration certificate for the vehicle. The defendant produced from the glove compartment a certificate of title which had been filled out and signed for transfer within previous weeks in Arizona. The signatures of the sellers were identical in all respects to those of the owners shown on the certificate, but the defendant, who said he was the purchaser, had not signed it in the proper space. This certificate indicated a license number for the 1966 vehicle which did not check with the current Arizona license plates upon it. The officer asked to look at the identification number of the automobile on the inside of the door and was shown it by the defendant. That number checked with the certificate of title identification number. Defendant said that the certificate of title paper was all he had for it. A current and several previous years' registration certificates were clipped to the sun visor at all times and they showed that the current license plates upon the vehicle were proper, because the current plates had been substituted for the originals several years earlier. The fact they were there was discovered the next day.

The police officer told defendant he wanted to look into the trunk of the vehicle. The defendant remonstrated asking whether he had to allow the officer to look there. The officer told him that he would be arrested for switched license plates and after that the trunk would be looked into anyway. In his testimony the officer said that he would not have let defendant go at that time, that is, the defendant was in custody. Thus induced, the defendant produced a key and the trunk was opened. The officer testified that

he was looking for license plates which had been removed in a switch, and that he suspected the automobile was stolen.

In the trunk were two cardboard boxes which were taped tightly shut. The officer testified he immediately suspected they contained marihuana because of their tight and odor-inhibiting bindings and asked defendant if marihuana was in them.[①] He testified that by defendant's expression he felt he had hit upon the correct answer. The defendant said he did not know what was in the boxes and that he had not looked in the trunk when he purchased the vehicle. The officer closed the lid of the trunk and arrested defendant for having switched license plates upon his vehicle, which is a traffic offense under ORS 481.255. The officer had the defendant assume a spread-eagle position against the police officer's car and made a pat-down search for weapons, finding nothing suspicious. It was night and cold and the defendant asked to go to his car to get his jacket. The officer told him to stay away from the car, that he was going to search it for weapons, and had defendant remain in the police car handcuffed until another officer arrived to drive the vehicle into town.

The defendant was taken to the police station. The officer prepared and gave him a citation for switched plates, and indorsed the amount of bail on the citation as "$27." The defendant's person was then thoroughly searched and the baggie of marihuana was found upon him. The defendant contended, and the

---

[①] There is reason to believe that the officer's stop of the vehicle was initially inspired by a suspicion of marihuana being in it, for he testified that in a recent school session he had attended the students had been told they might expect narcotics to be transported long distances by lone males in vehicles, and this had a bearing on his actions.

officer would not deny, that a pocketknife in defendant's possession was returned to him before transportation to jail. Prior to the search, inquiry had been sent to Arizona concerning the license plates; and shortly after the search was made Arizona replied that the plates were proper. The charge of switched plates was then dropped and the charge for possession, of marihuana was placed against the defendant. He was taken from the state police office to the county jail at a different location. The next morning the officer with the aid of the district attorney made his affidavit in support of a search warrant which a justice of the peace issued. The search disclosed 25 two-pound bricks of marihuana in the boxes. The affidavit in support of the search warrant had failed to state what the officer believed would be found in the boxes and whether he would find contraband in the car. It was on the basis of this deficiency that the trial court suppressed the contraband found in the car. The affidavit related numerous of the other facts mentioned above including that the baggie of marihuana had been found in the second search of defendant's person.

In this appeal the only issue is whether the suppression of the contents of the two cardboard boxes was correct. We hold that it was, but our reasoning in coming to that conclusion goes a different route than that of the trial court and causes us to examine the same facts the trial court examined in coming to its ruling with reference to the search which resulted in the seizure of the baggie of marihuana from the defendant's person. This is necessary because a most material allegation of the affidavit for the search warrant was that marihuana had been found upon defendant's person.

The defendant was initially arrested for a traffic

offense. The exhaustive testimony on the motion to suppress creates more than a suspicion that the officer from the beginning was seeking an excuse for an exploratory search of the vehicle. If he found a good and lawful reason, he is not to be criticized for the search. The officer contended that he searched the defendant's person after he took him to the state police office in Baker for weapons such as "razor blades" because he was going to take the defendant to another place to jail and he did not want the defendant to have any such weapons on him when he got there. Yet, he seemed to attach no importance to the pocketknife, which certainly bears a major characteristic similar to that of razor blades.

This was not an inventory or booking search preliminary to jailing such as that which we discussed in *State v. Riner,* 6 Or App 72, 485 P2d 1234, Sup Ct *review denied* (1971). In that case defendant was required to empty his pockets as he was being booked into jail. The question here is whether the officer had the right to make a thorough search of defendant's person in connection with a bailable traffic arrest as distinguished from a pat-down search for weapons. Defendant had ample money to make the bail of $27 before being booked into jail, and he was never given that opportunity.

In 1972 the District of Columbia Circuit Court of Appeals decided two cases in which the facts were strikingly similar to those of the case at bar. *United States v. Mills,* 472 F2d 1231, No. 22,444 (DC Cir 1972), and *United States v. Robinson,* 471 F2d 1082 (DC Cir 1972). In the latter it said:

"[T]he question is * * * squarely presented whether, and under what circumstances, an arrest-

ing officer may conduct a *full* search of the person incident to a lawful arrest for violation of a mere motor vehicle regulation. (Footnote omitted.) 471 F2d at 1090.

"* * * [A] distinction must be drawn between the 'routine' traffic arrest—where the officer simply issues a notice of violation and allows the offender to proceed—and the more serious cases in which the officer effects an 'in-custody' arrest in order to transport the traffic offender to the stationhouse for booking * * *.

"The touchstone of the Fourth Amendment is reasonableness, and the possibility that a routine traffic stop might result in injury to the officer, although unquestionably real, is so remote that '[t]o allow the police to routinely search for weapons in all such instances would * * * constitute "intolerable and unreasonable" intrusion into the privacy of the vast majority of peaceable citizens who travel by automobile.' People v. Superior Court of Yolo County [Kiefer], 3 Cal.3d 807, 91 Cal. Rptr. 729, 744, 478 P.2d 449, 464 (1970) (en banc).

"We therefore conclude that the permissible scope of searches incident to routine traffic arrests, where there is no evidentiary basis for a search and where the officer intends simply to issue a notice of violation and to allow the offender to proceed, must be governed by the teaching of the Supreme Court as set forth in Terry [v. Ohio, 392 U.S. 1, 88 S Ct 1868, 20 LEd 2d 889 (1968)], and Sibron v. New York, 392 U.S. 40, 88 S Ct 1889, 20 LEd 2d 917 (1968)]. Thus the most intrusive search the Constitution will allow in such situations is a limited patdown for weapons, and then only when there exist special facts or circumstances which give the officer reasonable grounds to believe that the person with whom he is dealing is armed and presently dangerous.

"As the Government points out, however, the

instant case involves not a 'routine' traffic arrest, but rather a situation in which the arresting officer was required to take appellant into custody * * *.

"* * * [I]t would seem clearly unreasonable to expect a police officer to place a suspect in his squad car for transportation to the stationhouse without first taking reasonable measures to insure that the suspect is unarmed. We therefore conclude that whenever a police officer, acting within the bounds of his authority, makes an in-custody arrest, he may also conduct a limited *frisk* of the suspect's outer clothing in order to remove any weapons the suspect may have in his possession. There are circumstances in which the element of danger may require a full search even as to persons arrested for relatively minor traffic-type offenses, as where the frisk causes the officer's suspicion to be reasonably aroused as to weapons * * *. But no such predicate was advanced for the search at bar. The record clearly established Jenks searched appellant without any purpose in mind—'I just searched him' —because this was standard police instructions."[2] (Footnotes omitted.) 471 F2d at 1096-98.

The facts at bar are similar to those in *Robinson*. In fact, in partial justification of the second search of the person the officer testified:

"Q [By defense counsel:] * * * You say you have got a right to—any man that you have got in custody, even though handcuffed, still got a right to go ahead and search his person?
"A I feel that I do."

[2] In *Robinson* the court relied principally upon two recent California Supreme Court cases—People v. Superior Court, 3 Cal 3d 807, 91 Cal Rptr 729, 478 P2d 449 (1970), and People v. Superior Court, 7 Cal 3d 186, 101 Cal Rptr 837, 496 P2d 1205 (1972). In the first, the court struck down a search of a vehicle where there was a traffic arrest, and in the second a search of the person. These cases, in exhaustive opinions, appear to have reviewed in detail available precedents and reasoning on all facets of cases such as that at bar, and must be viewed as leading and influential precedents.

In the District of Columbia Circuit Court of Appeals case, *United States v. Mills,* supra, the defendant was arrested for a traffic offense which was bailable for $50. Defendant had more than enough money on him to meet the bail, but after he was taken to the police station he was nevertheless searched. Heroin was found. It was suppressed as evidence, the court holding that the search was unreasonable under the circumstances. Two cases from California and two from Colorado were cited in support of this decision.[9]

We are not bound by the recent opinions on the subject which we have cited from the District of Columbia Circuit, California and Colorado, but they are persuasive. We do not find recent precedent to the contrary. Their reasoning seems to be a logical extension of that expressed by the Oregon Supreme Court in *State v. O'Neal,* 251 Or 163, 444 P2d 951 (1968), where the court suppressed marihuana found in a search of the billfold of a person stopped for lack of a license plate on his vehicle. There, the court said:

"The search of the wallet obviously had nothing to do with the officers' safety. The defendant testi-

---

[9] Carpio v. Superior Court, 19 Cal App. 3d 790, 97 Cal Rptr 186 (1971); People v. Mercurio, 10 Cal App. 3d 426, 88 Cal Rptr 750 (1970); People v. Greenwood, 174 Colo 500, 484 P2d 1217 (1971); People v. Overlee, 174 Colo 202, 483 P2d 222 (1971). (This case is almost exactly on point with the case at bar, and holds that because the officer did not give defendant the opportunity for release afforded by law, which was a combination of bail and a written promise to appear, the inventory search prior to booking into jail which turned up marihuana was illegal, and the evidence of marihuana was suppressed. In that case, the defendant was from another city in the same state, which is the situation in the case at bar. In State v. Riner, 6 Or App 72, 485 P2d 1234, Sup Ct. *review denied* (1971), in which we approved a booking search at the jail after a traffic arrest, the defendant was from out of state, and standard police procedure was to hold such defendants until clearance from the home state was obtained.)

fied that the officers 'patted him down' before placing him in the police car. The officers did not remember whether they had or had not. In any event, it is difficult to see how defendant's wallet could have reasonably been believed to have contained a weapon.

"We also conclude that the search could not reasonably relate to the offenses for which the defendant was arrested or cited. We can conceive of nothing that could be found in defendant's wallet that would be evidence of driving without a license plate, driving with an expired plate, or driving without a valid operator's license." 251 Or at 166.

We conclude that, regardless of the possible illegality of the initial search for switched license plates in the trunk of the car,[④] the thorough second search of the defendant was unreasonable. We note that if the officer had looked at the visor over the front seat of the vehicle—a usual place to find such things—he would have found what he said he was looking for,

---

[④] In State v. O'Neal, 251 Or 163, 167, 444 P2d 951 (1968), the Oregon Supreme Court said:

"* * * [I]n order to search any interior compartment of a vehicle after a traffic arrest, there must be probable cause to believe that some crime, other than the traffic offense, has been committed, *and the search must be relevant to that other crime.*" (Emphasis supplied.)

The officer had no reason other than saying he suspected auto theft to believe defendant had committed any crime other than switching license plates when he coerced defendant into opening the trunk of the vehicle. With reference to the testimony about suspicion of auto theft, defendant had already produced a certificate of title which had checked with the identification number of the vehicle. No problem would have been presented in any event, if there was probable cause, in obtaining a warrant if the officer was sincere in his desire to search the trunk for switched license plates for he testified that he fully intended to make the arrest and would not release the defendant. We note that the notation of $27 bail on the citation for the license plate charge is inconsistent with the latter testimony. The subject of vehicle searches following traffic offense arrests is exhaustively examined in the California cases cited in n 2, supra.

that is, evidence of whether there were switched plates on the vehicle. Fruits of the second search of the person were probably the most essential part of the probable cause affidavit authorizing the search of the vehicle and boxes. We have held that the second body search was illegal; consequently its fruits may not be used. This being so, the search warrant which produced the marihuana from the boxes in the vehicle trunk was invalid and that evidence was properly suppressed.

Affirmed.