PEOPLE v DIXON

OPINION OF THE COURT

1. ARREST—POLICE—MISDEMEANOR—PROBABLE CAUSE.

A police officer may not arrest for the commission of a misdemeanor on probable cause.

2. DRUGS AND NARCOTICS—ARREST—MISDEMEANOR—SEARCHES AND SEIZURES—BAIL.

Defendant's arrest was valid because a misdemeanor was committed in the arresting officer's "presence"; nevertheless, his conviction of unlawful possession of a narcotic drug should be reversed because a search at the police station which resulted in the discovery of heroin was in derogation of his statutory right to bail (MCLA 780.581 *et seq.).*

3. ARREST—MISDEMEANOR—PROBABLE CAUSE—STATUTES—PEACE OFFICER.

There is no authorization for a warrantless arrest for a misdemeanor whether on probable cause or on any other basis unless it was committed in the presence of a peace officer (MCLA 764.15).

4. COMMON LAW—POLICE—ARREST—MISDEMEANOR—BREACH OF PEACE.

At common law a police officer was authorized to arrest without a warrant for a misdemeanor only when it constituted a breach of the peace and the breach occurred in his presence; Michigan has abandoned the breach of the peace limitation but has retained the presence requirement.

REFERENCES FOR POINTS IN HEADNOTES

[1–4] 5 Am Jur 2d, Arrest §§ 26, 28.
[5–8] 5 Am Jur 2d, Arrest §§ 30, 32.
[9, 14] 68 Am Jur 2d, Searches and Seizures § 21.
[10, 11, 13, 16] 68 Am Jur 2d, Searches and Seizures §§ 39, 40.
[12] 8 Am Jur 2d, Bail and Recognizance § 19.
[15] 68 Am Jur 2d, Searches and Seizures §§ 19, 20.
[17] 8 Am Jur 2d, Bail and Recognizance § 21.

5. Arrest—Police—Third Persons—Misdemeanor—Victims—Witnesses—Informers—Magistrate—Arrest Warrant.

The principal present day importance of the requirement that a police officer can arrest a person for a misdemeanor without a warrant only if it was committed in his presence is that a police officer may not utilize information received from third persons as a basis for a warrantless misdemeanor arrest; when the basis of the officer's belief that the defendant has committed a misdemeanor is information imparted to him by, say, victims, witnesses or informers, he must present the evidence to a magistrate and seek an arrest warrant, he may not act on his own appraisal of the reasonableness of the information; another police officer is not a third person within that policy.

6. Arrest—Presence Requirement—Automobiles—Official Records—Licenses.

The combined information of two police officers satisfied the purpose and policy of the requirement that a police officer can arrest a person for a misdemeanor without a warrant only if it was committed in his presence where the arresting officer saw defendant driving a vehicle and another officer examined the official records which showed that his license was suspended.

7. Arrest—Information—Radio—Police—Official Record—Knowledge—Misdemeanor—Driving Without an Operator's License—Licenses.

A police officer may properly rely on information obtained by radio from another police officer who is examining an official record and such information becomes part of the arresting officer's knowledge which he can consider in deciding whether a law violation has occurred in his presence and to arrest for the misdemeanor of driving without an operator's license (MCLA 257.904).

8. Arrest—Police—Misdemeanor—Information—Victims—Witnesses—Informers.

Police officers may not arrest for a misdemeanor not committed in their presence on information obtained from persons who are not police officers, e.g., victims, witnesses and informers or on the basis of information obtained from a police officer who is relying on information obtained from a person who is not a police officer.

9. Searches and Seizures—Weapons—Jail—Bail.

Evidence seized in a search of a defendant at a jail should have been suppressed and, therefore, his conviction should be re-

versed where defendant had been searched for weapons before he arrived at the jail; he had a statutory right to immediate bail, and the search at the jail was in derogation of that statutory right (MCLA 780.581 *et seq.*).

10. STATUTES—BAIL—INTERIM BAIL STATUTE—MOTOR VEHICLE CODE—ARREST—MISDEMEANOR—MAGISTRATE.

There is no inconsistency between the interim bail statute and sections of the Motor Vehicle Code concerning persons arrested without a warrant and appearance upon arrest without warrant for misdemeanor; the interim bail statute complements those sections by providing a means by which minor traffic offenders arrested without a warrant and not released on citation, may post bail if no magistrate is available (MCLA 257.727, 257.728, 780.581 *et seq.*).

11. STATUTES—BAIL—INTERIM BAIL STATUTE—ARRESTING OFFICER—SHERIFFS AND CONSTABLES—DUTY TO INFORM.

The sense of the interim bail statute and its purpose of avoiding unnecessary incarceration of minor offenders can only be served by imposing on the arresting officer and the sheriff the duty to inform the person about to be jailed of the statutory protection of which he otherwise would probably be ignorant (MCLA 780.581 *et seq.*).

12. BAIL—RECOGNIZANCE—OFFICERS—JAILER—MAGISTRATE.

The statutory right to recognize to an officer and a jailer applies at all times that a magistrate is not available.

13. EVIDENCE—SUPPRESSION—BAIL—TRAFFIC OFFENSE.

Any evidence gained in derogation of the statutory right to be released upon posting bail is to be suppressed; no other remedy is as likely to assure its full enforcement and the protection of the citizenry at large from unwarranted and unnecessary inconvenience, embarrassment and risk attendant incarceration for a minor traffic offense (MCLA 780.581 *et seq.*).

14. SEARCHES AND SEIZURES—DRUGS AND NARCOTICS—HEROIN—ARREST—WEAPONS.

Discovery of heroin during a search at a police station is not validated by certain opinions of the United States Supreme Court which predicated the right to search as an incident of the arrest and the need of the officer to protect himself because defendant had already been searched for weapons before even entering the police car and the station house procedures were not intended nor could they be justified as a further search for either weapons or possible fruits of the crime.

SEPARATE OPINION

T. G. KAVANAGH and LEVIN, JJ.

15. SEARCHES AND SEIZURES—OUTSIDE OF CURTILAGE—CONSTITUTIONAL
    LAW.

*The proviso for drugs and weapons seized outside the curtilage of
a dwelling house applies only to claims arising under the
provisions of that section of the Michigan Constitution; the
proviso does not preclude the suppression on other grounds of
drugs and weapons seized outside the curtilage of a dwelling
house (Const 1963, art 1, § 11).*

16. SEARCHES AND SEIZURES—SUPPRESSION OF EVIDENCE—ARREST—
    TRAFFIC OFFENSES—BAIL.

*Defendant is entitled to the suppression of seized evidence be-
cause of the violation of his statutory right, applicable to
arrests for minor traffic offenses, to immediate bail.*

DISSENTING OPINION

M. S. COLEMAN and J. W. FITZGERALD, JJ.

17. ARREST—DRIVING WITHOUT AN OPERATOR'S LICENSE—LICENSES—
    STATUTES—BAIL—MAGISTRATE—PROBATE JUDGE—ARRESTING
    OFFICER.

*Under the law as it was at the time of arrest for driving without
a valid operator's license, March 19, 1971, defendant did not
have a statutory right to immediate bail in the absence of a
magistrate or probate judge at 3 a.m.; he did have a right to be
brought before a magistrate or probate judge without unreason-
able delay and, in the interim, bail was available only at the
discretion of the arresting officer (MCLA 257.727, 780.587).*

Appeal from Court of Appeals, Division 2,
Quinn, P. J., and R. B. Burns and C. J. Byrns, JJ.,
affirming St. Clair, Stanley C. Schlee, J. Submitted
April 4, 1974. (No. 12 April Term 1974, Docket No.
54,284.) Decided October 30, 1974.

45 Mich App 64 reversed.

Herman Lester Dixon was convicted of unlawful
possession of a narcotic drug. Defendant appealed

to the Court of Appeals. Affirmed. Defendant appeals. Reversed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Peter E. Deegan,* Prosecuting Attorney, *Peter R. George,* Chief Appellate Attorney, and *Robert H. Cleland,* Assistant Prosecuting Attorney, for the people.

*State Appellate Defender Office* (by *Norris J. Thomas, Jr.),* for defendant on appeal.

LEVIN, J. Herman Lester Dixon appeals his conviction of unlawful possession of a narcotic drug.[1]

Dixon was arrested for a traffic offense and searched at the scene; nothing was found. Heroin was discovered during a search at the police station. Contending that both his arrest and the search were illegal, Dixon moved before and at trial to suppress the heroin.

The Court of Appeals, in holding that Dixon was validly arrested, "adopt[ed] the following rules":

"A police officer may arrest without a warrant for a misdemeanor if the misdemeanor was actually committed in the officer's presence or if, from personal observations, the officer has reason to believe that a misdemeanor was committed in his presence. A police officer has reason to believe that a misdemeanor has been or is being committed in his presence if the circumstances observed by him would lead a reasonable person to conclude that he was witnessing the commission of a misdemeanor by the person arrested."[2]

We agree with the Court of Appeals that Dixon's arrest was valid, not because a police officer may arrest for the commission of a misdemeanor on

---

[1] MCLA 335.153; MSA 18.1123.

[2] *People v Dixon,* 45 Mich App 64, 69; 205 NW2d 852 (1973).

probable cause—he may not—but because the misdemeanor was committed in the arresting officer's "presence."[3] We, nevertheless, reverse Dixon's conviction because the search at the police station was in derogation of his statutory right to bail.

I

Two State Police officers stopped the automobile Dixon was driving at about 3 a.m. because they thought the vehicle was making excessive noise and suspected a faulty muffler.[4] When Dixon produced his driver's license, one of the officers observed a second license in his wallet which aroused his suspicion and caused him to radio headquarters. He was advised that Dixon's license had been suspended. Dixon was then arrested for operating a motor vehicle with a suspended license.[5] A contemporaneous frisk revealed no weapon and he was transported to the county jail.

A statute authorizes a peace officer to make a warrantless arrest for "any felony or misdemeanor committed in his presence." It also authorizes warrantless arrests for a felony on probable cause and in certain other circumstances, but there is no authorization for a warrantless arrest for a misdemeanor whether on probable cause or on any other basis unless it was "committed in his presence."[6]

Dixon argues that the arrest was invalid because the officer "did not learn from his own senses" that Dixon was committing a misdemeanor. Knowledge of a necessary element of the offense

---

[3] MCLA 764.15; MSA 28.874.
[4] MCLA 257.707; MSA 9.2407.
[5] MCLA 257.904; MSA 9.2604.
[6] MCLA 764.15; MSA 28.874.

was not gained from the officer's "personal observation" but from a hearsay radio report.

In holding that the police could arrest on probable cause ("such information as would lead a reasonable person to conclude"), the Court of Appeals noted several jurisdictions in which "a police officer may properly arrest without a warrant if he has probable cause to believe from personal observations that a misdemeanor has been committed in his presence."[7] All but one of these cases were civil actions against the arresting police officer. In the lone criminal case cited by the Court of Appeals, *State v DelVecchio,* 149 Conn 567; 182 A2d 402 (1962), the statement was dictum; the Court held that the arrest was not lawful.

At common law a police officer was authorized to arrest without a warrant for a misdemeanor only when it constituted a breach of the peace and the breach occurred in his presence.[8] Most states, including Michigan, have abandoned the breach of the peace limitation. Some have also authorized warrantless arrests for misdemeanors on probable cause. But a large number of states, like Michigan, have retained the presence requirement.[9]

Whatever may have been its historical origins, we perceive the principal present day importance of the presence requirement to be that a police officer may not utilize information received from third persons as a basis for a warrantless misdemeanor arrest. When the basis of the officer's belief that the defendant has committed a misdemeanor is information imparted to him by, say,

---

[7] *People v Dixon, supra,* pp 68–69.

[8] 6 CJS, Arrest, § 6, p 589. *See Robinson v State,* 4 Md App 515, 525; 243 A2d 879, 886 (1968).

[9] *See* Comment, *The Presence Requirement and the "Police-Team" Rule in Arrest for Misdemeanors,* 26 Wash & Lee L Rev 119, 123, fn 21 (1969).

victims, witnesses or informers, he must present
the evidence to a magistrate and seek an arrest
warrant. He may not act on his own appraisal of
the reasonableness of the information.

Another police officer is not a third person
within that policy. Courts in other jurisdictions
have developed a "police team" qualification of the
presence requirement, permitting officers who are
working together on a case to combine their col-
lective perceptions so that if the composite other-
wise satisfies the presence requirement that re-
quirement is deemed satisfied although the arrest-
ing officer does not himself witness all the ele-
ments of the offense.[10]

In this case the arresting officer saw Dixon
driving a vehicle. Another officer examined the
official records which showed that his license was
suspended. Their combined information satisfies,
in our opinion, the purpose and policy of the
presence requirement.

We recognize that the official record is in a sense
hearsay. It would not, however, be in accord with
reason to deny police officers the power to act on
information of this kind officially compiled in a
public record.

The only person who might know of his own
knowledge whether Dixon's license was suspended
was Dixon himself. He alone was likely to know
whether an order of suspension had been entered
and remained in force and effect. But even his
perceptions may have been mistaken as, not being
a lawyer and probably not having examined all
the pertinent records, he could not be entirely sure
of his official status.

In point of fact, about the only way to establish
whether a person's operator's license is suspended

---

[10] *See* Comment, *op cit,* fn 9.

at a given moment is to conduct a judicial hearing
at which all persons who have been involved in
proceedings to suspend and to reinstate could tes-
tify and an adjudication could be made; but even
that would be subject to appeal.

We hold that in deciding whether to arrest for
the misdemeanor of driving without an operator's
license, a police officer may properly rely on infor-
mation obtained by radio from another police offi-
cer who is examining an official record, that such
information becomes part of the arresting officer's
knowledge which he can consider in deciding
whether a law violation has occurred in his pres-
ence.

We reiterate that this qualification should not be
read as justifying warrantless misdemeanor ar-
rests on other "reasonable" or "dependable" infor-
mation. We especially emphasize that police offi-
cers may not arrest on information obtained from
persons who are not police officers, *e.g.,* victims,
witnesses and informers or on the basis of infor-
mation obtained from a police officer who is rely-
ing on information obtained from a person who is
not a police officer.

## II

Upon arrival at the jail, Dixon was ordered into
a small room and there directed by one of the
officers and the jail turnkey to remove his sweater.
The turnkey's investigation of the sweater's pocket
revealed several small packets wrapped in tissue
paper. The packets were opened revealing a white
substance which was thought to be and later anal-
ysis proved to be heroin. Dixon was then arrested
for unlawful possession of a narcotic drug. Addi-
tional heroin was discovered during an intensive

"strip search" of Dixon incidental to the narcotic violation arrest.

Dixon had been searched for weapons before he arrived at the jail. The search at the jail cannot be defended as an inventory search unless the authorities could justifiably incarcerate him. Dixon had a statutory right to immediate bail, a right rooted in Const 1963, art 1, §§ 15 and 16, as well as the Eighth Amendment. The search at the jail was in derogation of that statutory right. The evidence seized in the search should have been suppressed and, therefore, Dixon's conviction is reversed.

A statute requires that whenever a person is arrested without a warrant for a misdemeanor (now, since April 1, 1971, more particularly defined: "punishable by imprisonment for not more than 90 days or a fine of not more than $100.00, or both"[11]—precisely the penalty for the traffic offense for which Dixon was arrested) the arresting officer shall take him without unnecessary delay before the most convenient magistrate to answer the complaint.[12]

---

[11] MCLA 780.581; MSA 28.872(1).

[12] At the time of Dixon's arrest, March 19, 1971, the then effective § 1 of the interim bail statute provided:

"When any person is arrested without a warrant for any offense, violation of a city, village or township ordinance cognizable by a justice of the peace or a municipal judge, the officer making the arrest shall take, without unnecessary delay, the person arrested before the most convenient magistrate of the county in which the offense was committed to answer to the complaint made against him.

"If no magistrate is available or immediate trial cannot be had, the person so arrested may recognize to the direct supervisor of the arresting officer or department for his appearance by leaving with him a sum of money not to exceed $100.00. If, in the opinion of the arresting officer or department, the arrested person is under the influence of liquor or narcotic drug, is wanted by police authorities to answer to another charge, or it is otherwise unsafe to release him, the arrested person shall be held until he is in a proper condition to be released, or until the next session of court." 1961 PA 44, § 1.

Effective April 1, 1971, § 1 of the statute was amended:

"(1) When any person is arrested without a warrant for a misde-

The prosecutor argues that these provisions for immediate bail are inapplicable because Dixon was arrested in the middle of the night and no magistrate was then available. It was, therefore, necessary to incarcerate him at least until morning.

The statute provides, however, that if no magistrate is available, the arrested person may[13] recog-

meanor, violation of a city, village or township ordinance punishable by imprisonment for not more than 90 days or by a fine of not more than $100.00, or both, the officer making the arrest shall take, without unnecessary delay, the person arrested before the most convenient magistrate of the county in which the offense was committed to answer to the complaint made against him.

"(2) If no magistrate is available or immediate trial cannot be had, the person so arrested may recognize to the direct supervisor of the arresting officer or department or the sheriff or his deputy in charge of the county jail if the person so arrested is lodged in the county jail for his appearance by leaving with him:

"(a) A sum of money not to exceed $100.00, if the offense is punishable by imprisonment for not more than 90 days or by a fine, or both except as provided in subdivision (b).

"(b) A sum of money not to exceed $200.00, if the offense is a violation of sections 619, 625 or 626 of Act No. 300 of the Public Acts of 1949, as amended, being sections 257.619, 257.625 and 257.626 of the Compiled Laws of 1948, or an ordinance corresponding thereto.

"(3) If, in the opinion of the arresting officer or department, the arrested person is under the influence of liquor or narcotic drug, is wanted by police authorities to answer to another charge, or it is otherwise unsafe to release him, the arrested person shall be held until he is in a proper condition to be released, or until the next session of court." 1970 PA 157, § 1.

[13] Justice Coleman is correct that the arresting officer has the option under subparagraph (4) of § 727 of the Motor Vehicle Code (MCLA 257.727; MSA 9.2427) of either

(i) taking before a magistrate or probate court a person arrested because he does not have in his immediate possession a valid operator's or chauffeur's license, or

(ii) if the arresting officer otherwise satisfactorily determines the identity of such person and the practicability of subsequent apprehension in the event of failure to voluntarily appear before a designated magistrate or probate court, releasing such person from custody ("the officer *may* release such person from custody"; emphasis supplied) with instructions to appear in court, given in writing as prescribed by § 728, *i.e.,* by issuing a citation to appear (a ticket).

In this case the officer chose not to release Dixon on issuance of a citation but, rather, took him to jail. It then became his duty, both under § 727 of the Motor Vehicle Code and § 1 of the interim bail statute, to take him before a magistrate.

Under the interim bail statute, if no magistrate is available, "the

nize to the direct supervisor of the arresting officer or department (and now, the sheriff as well or his deputy in charge of the county jail) by leaving a sum of money not to exceed $100 with exceptions not here pertinent.

The district court in the district where the jail was located had established by general order a standard bail of $35 for the release of an offender charged with driving without a license.[14]

The prosecutor, citing an opinion of the Attorney General,[15] contends that this statute authorizing misdemeanants to post bond does not apply to traffic arrests.

Section 7, before its amendment effective April 1, 1971, provided that the act "shall not affect sections 727 and 728"[16] of the Motor Vehicle Code, and, after amendment, provides that it "shall not affect section 728" of the Motor Vehicle Code.[17]

---

person so arrested *may* recognize to the direct supervisor of the arresting officer * * * ." (Emphasis supplied.) MCLA 780.581; MSA 28.872(1). Manifestly, just as the officer has discretion under § 727 of the Motor Vehicle Code either to issue a citation or to take the offender into custody, under the interim bail statute it is the offender who enjoys the discretion whether to recognize (post bail) to the direct supervisor of the arresting officer.

[14] "Pursuant to District Court Rule 2004, this Court having considered the establishment of cash bail for persons arrested on weekends for misdemeanors and traffic violations, it is hereby

"ORDERED that the St. Clair County Sheriff Department or the several police departments, including the Michigan State Police, shall accept cash bail for persons arrested on Saturdays, Sundays and holidays when this court is not in session for the appearance of the defendant at the opening of court on its next regular business day as follows:

| | |
|---|---|
| "For all misdemeanors | $35.00 |
| "For reckless driving | $50.00 |
| "For operating an automobile while under the influence of intoxicating liquor | $100.00" |

[15] OAG 1961–1962, No 3,624, p 305 (March 5, 1962).

[16] MCLA 257.727, 257.728; MSA 9.2427, 9.2428.

[17] As originally enacted, the catchline heading to § 7 was "Traffic offenses excepted." 1961 PA 44, § 7. This catchline heading was

The "non-affected" sections establish alternative, less burdensome arrest and release procedures for traffic offenders. Section 728 provides for release of the arrested person upon issuance of a written citation. Section 727 authorizes an officer who has arrested a person for reckless driving or for not having a valid operator's or chauffeur's license in his immediate possession, under certain circumstances to release such person from custody with a citation to appear in court. The penalties for the other offenses covered by § 727 take them out of the operation of the interim bail statute.

There is no inconsistency between the interim bail statute and §§ 727 and 728 of the Motor Vehicle Code. The interim bail statute complements those sections by providing a means by which minor traffic offenders arrested without a warrant and not released on citation, may post interim bail if no magistrate is available.

The prosecutor points out that the interim bail statute does not direct the arresting officer to inform the arrested person of his right to post bail. We are persuaded, however, that the sense of the statute and its purpose of avoiding unnecessary incarceration of minor offenders can only be served by imposing on the arresting officer (and now, the sheriff as well) the duty to inform the person about to be jailed of the statutory protection of which he otherwise would probably be ignorant.

---

retained when § 7 was amended in 1970 (1970 PA 157, § 7) but in the Compiled Laws of 1970 the catchline heading was changed to "Traffic offenses not affected." 1970 CL 780.587.

It is provided, however, by general statute (MCLA 8.4b; MSA 2.215) that the catchline heading of a section "shall in no way be deemed to be a part of the section or the statute, or be used to construe the section more broadly or narrowly than the text of the section would indicate, but shall be deemed to be inserted for purposes of convenience to persons using publications of the statute."

In *United States v Mills,* 153 US App DC 156, 165; 472 F2d 1231, 1240 (1972), the Court of Appeals for the District of Columbia Circuit held that evidence obtained during a booking inventory procedure at the precinct station, following a weapons search at the time of arrest for a traffic offense, should be suppressed because of the failure to apprise the defendant of his right to be released upon posting $50 "collateral":

"When a person is charged with a collateral-type petty offense, under which he rightfully has the opportunity to post collateral and avoid further detention, and there is no probable cause to believe he committed a more serious crime, the police may not engage in an inventory search of the offender, or an equivalent direction that he empty his pockets, and seek to support it on the ground of holding him in further confinement, unless at a minimum he was timely notified of his opportunity to post collateral (and thus avoid further detention) and refused or was unable to do so."

Similarly, see *People v Mercurio,* 10 Cal App 3d 426, 431; 88 Cal Rptr 750, 753 (1970),[18] where a pedestrian arrested for crossing an intersection against a "Don't Walk" sign was taken to the station house and searched yielding a vial of mari-

_____

[18] Other decisions suppressing evidence obtained in derogation of an offender's statutory right to bail following arrest for commission of a minor offense include *People v Marin County Superior Court,* 14 Cal App 3d 935; 92 Cal Rptr 545 (1971); *People v Overlee,* 174 Colo 202; 483 P2d 222 (1971); *State v Gwinn,* 12 Or App 444; 506 P2d 187 (1973), *S Ct rev den* (1973); *Agar v Los Angeles County Superior Court,* 21 Cal App 3d 24; 98 Cal Rptr 148 (1971); *Carpio v Santa Barbara County Superior Court,* 19 Cal App 3d 790; 97 Cal Rptr 186 (1971); *People v Los Angeles County Superior Court,* 7 Cal 3d 186; 101 Cal Rptr 837; 496 P2d 1205 (1972).

Several of these cases invoke a slightly different analysis to exclude the evidence gained in derogation of the right to immediate bail. They consider the seized evidence as the fruit of an "unreasonable" search and, therefore, inadmissible under the Fourth Amendment and analogous state constitutional provisions. As indicated in the text, our decision is not premised on the Fourth Amendment.

juana. In rejecting the claim that the police were justified in incarcerating Mercurio and subjecting him to an inventory search because of the unavailability of a magistrate at the odd hour of the arrest (on a Sunday night) and in holding that the marijuana evidence should be suppressed, the Court declared:

"It is not reasonable to suppose the Legislature would subject an arrestee to incarceration and search because he is apprehended at nighttime on a weekend, without providing him an alternative method of making bail to avoid the indignity of jailing."

While the district court's general order applies only to persons arrested "on Saturdays, Sundays and holidays," and Dixon was arrested on a weekday night, not on a Saturday, Sunday or holiday night, the statutory right to recognize to the officer (and now, the jailer as well) applies at all times that a magistrate is not available.

When Dixon was arrested he had $86.36. There is every reason to believe that had the officers informed him of his statutory right to be released upon posting bail and had they set bail at the amount determined by the district court as reasonable for this offense, $35, Dixon would have paid that sum. Under the circumstance that the district court had established that amount for Saturday, Sunday and holiday arrests, the officers could not properly have demanded more upon a weeknight arrest.

Any evidence gained in derogation of this statutory right is to be suppressed; no other remedy is as likely to assure its full enforcement and the protection of the citizenry at large from unwarranted and unnecessary inconvenience, embarrass-

ment and risk attendant incarceration for a minor
traffic offense.

## III

Discovery of the heroin is not validated by the
opinions of the United States Supreme Court in
*United States v Robinson,* 414 US 218; 94 S Ct
467; 38 L Ed 2d 427 (1973), and *Gustafson v
Florida,* 414 US 260; 94 S Ct 488; 38 L Ed 2d 456
(1973).

The Court predicated the right to search there
as an incident of the arrest and the need of the
officer to protect himself.[19]

Dixon had already been searched for weapons
before even entering the police car. The station
house procedures were not intended nor could they
be justified as a further search for either weapons
or possible fruits of the crime.[20]

"The inventory search is not a search incident to
arrest, but is rather a search incident to incarceration.
The purposes of the inventory search do not stem from
the objectives of protecting the arresting officer and
discovering evidence of the crime for which the sus-

---

[19] The crux of the Rehnquist opinions is that if the arresting officer
appears to have had a plausible reason for conducting a search for
weapons, the Court will not closely scrutinize the officer's assertion
that he conducted a search for that purpose to determine whether
such a search was actually necessary.

[20] The absence of probable cause for the station house search
subsequent to the arrest distinguishes this case from recently decided
*United States v Edwards,* 415 US 800, 805; 94 S Ct 1234; 39 L Ed 2d 771
(1974) in which the Court upheld the warrantless taking of clothing from
Edwards while he was incarcerated approximately ten hours after his
arrest:

"[C]ontemporaneously with or shortly after the time Edwards went
to his cell, the police [by further investigation at the scene] had
probable cause to believe that the articles of clothing he wore were
themselves material evidence of the crime for which he had been
arrested."

pect was arrested. No inventory search need be con-
ducted unless the suspect is to be incarcerated. * * *

"The inventory search should be viewed as incident
to incarceration, and not as incident to arrest. One
search cannot in fact be both a search incident to arrest
and an inventory search. This is not a mere game of
semantics." Comment: *The Inventory Search of an Of-
fender Arrested for a Minor Traffic Violation: Its Scope
and Constitutional Requirements,* 53 B U L Rev 858,
864 (1973).

Reversed.

T. M. KAVANAGH, C. J., and T. G. KAVANAGH,
WILLIAMS, and SWAINSON, JJ., concurred with
LEVIN, J.

LEVIN, J., *(separate opinion).* In *People v Moore,*
391 Mich 426, 435; 216 NW2d 770 (1974), we ruled
that the proviso to Const 1963, art 1, § 11 ("unrea-
sonable searches and seizures") "prohibiting the
exclusion from evidence of 'any narcotic drug,
firearm, bomb, explosive or any other dangerous
weapon, seized by a peace officer outside the curti-
lage of any dwelling house', precludes a construc-
tion of the Michigan search and seizure clause
imposing a higher standard of reasonableness for
searches and seizures of items named in the pro-
viso than the United States Supreme Court has
held applicable under the Fourth Amendment."

This proviso for drugs and weapons seized out-
side the curtilage of a dwelling house applies only
to claims arising under the "provisions of this
section," *i.e.,* § 11 of art 1 of the Constitution of
1963. The proviso does not preclude the suppres-
sion on other grounds of drugs and weapons seized
outside the curtilage of a dwelling house.

In this case, Dixon is entitled to the suppression
of the seized evidence because of the violation of

his statutory right, applicable to arrests for minor traffic offenses, to immediate bail.

T. G. KAVANAGH, J., concurred with LEVIN, J.

M. S. COLEMAN, J. *(dissent)*. The Court has reversed defendant's conviction for possession of heroin "because the search at the police station was in derogation of his statutory right to bail" prior to his appearance before a magistrate or the probate court. I dissent because the pertinent statute in effect at the time of the arrest did not provide such an immediate right.

At 3 a.m. on Friday, March 19, 1971, two Michigan State Police officers stopped the automobile which defendant was driving because the car was making excessive noise. When defendant produced his driver's license, one of the officers noted that defendant had a second license. This prompted a radio check on defendant which indicated that his license had been suspended. Defendant was arrested.

At the county jail defendant was ordered to remove his sweater. In it was found several packets containing a substance thought to be heroin. Defendant was then arrested for unlawful possession of a narcotic drug. A subsequent strip search disclosed more heroin.

Defendant was initially arrested pursuant to provisions of Chapter VI of the Michigan Vehicle Code, MCLA 257.727; MSA 9.2427 which reads in part:

"Whenever any person is arrested without a warrant for any violation of this act or of a provision of any ordinance substantially corresponding to any provision of this act, punishable as a misdemeanor, the arrested person shall, *without unreasonable delay,* be taken before a magistrate or probate court within the county

in which the offense charged is alleged to have been committed and who has jurisdiction of such offense and is nearest or most accessible with reference to the place where said arrest is made, in any of the following cases:

\* \* \*

"(4) When a person arrested does not have in his immediate possession a valid operator's or chauffeur's license. If the arresting officer otherwise satisfactorily determines the identity of such person and the practicability of subsequent apprehension in the event of failure to voluntarily appear before a designated magistrate or probate court as directed, the officer *may* release such person from custody with instructions to appear in court, given in writing as prescribed by section 728." (Emphasis added.)

The Court has cited MCLA 780.581; MSA 28.872(1)[1] as affording an individual the right to immediate bail when arrested without a warrant for a misdemeanor. However, at the time of this arrest on March 19, 1971, *MCLA 780.587; MSA 28.872(7) provided that the cited section "shall not affect" the provisions of MCLA 257.727 quoted above.* (Emphasis added.)

Under the law as it was at the time of this arrest, a defendant did not have a statutory right

---

[1] At the time of Dixon's arrest, March 19, 1971, the then effective § 1 of the interim bail statute provided:

"When any person is arrested without a warrant for any offense, violation of a city, village or township ordinance cognizable by a justice of the peace or a municipal judge, the officer making the arrest shall take, without unnecessary delay, the person arrested before the most convenient magistrate of the county in which the offense was committed to answer to the complaint made against him.

"If no magistrate is available or immediate trial cannot be had, the person so arrested may recognize to the direct supervisor of the arresting officer or department for his appearance by leaving with him a sum of money not to exceed $100.00. If, in the opinion of the arresting officer or department, the arrested person is under the influence of liquor or narcotic drug, is wanted by police authorities to answer to another charge, or it is otherwise unsafe to release him, the arrested person shall be held until he is in a proper condition to be released, or until the next session of court." 1961 PA 44, § 1.

to immediate bail in the absence of a magistrate or probate judge at 3 a.m. He did have a right to be brought before a magistrate or probate judge "without unreasonable delay". In the interim, bail was available only at the discretion of the arresting officer. There is no legal reason to reverse the decision in this case.

The decision of the Court of Appeals should be affirmed.

J. W. FITZGERALD, J., concurred with M. S. COLEMAN, J.