660 N.W.2d 67 (2003)
PEOPLE of the State of Michigan, Plaintiff-Appellant,
v.
Rodrick D. DAVIS, Defendant-Appellee.
Docket No. 122491, COA No. 228528.
Supreme Court of Michigan.
April 30, 2003.
On order of the Court, the application for leave to appeal from the September 20, 2002 decision of the Court of Appeals is considered, and it is DENIED because we are not persuaded that the question presented should be reviewed by this Court.
KELLY, J., concurs and states as follows:
While denying the application for leave to appeal, I would point out that, in the only issue articulated on appeal, the prosecutor assumed that defendant's arrest was unlawful. The question raised was simply was it error for the Court of Appeals to suppress defendant's confession because the Court failed to consider other factors which attenuated that taint of the unlawful arrest.
*68 CORRIGAN, C.J., dissents and states as follows:
I respectfully dissent from the order denying leave to appeal. I question the Court of Appeals conclusion that defendant's arrest was not supported by probable cause.[1] In my view, the investigating police officers had probable cause to arrest defendant for arson and murder, as well as for stalking his ex-girlfriend. If defendant's arrest was lawful, then no taint existed to attenuate. Thus, I would grant leave to appeal to consider whether to reinstate the trial court's finding of probable cause.

I. Factual Background
In the early morning hours of March 24, 1999, a house in Detroit caught fire, killing April Fleming and her mother, who were trapped inside. Defendant is April's ex-boyfriend. Arson investigators determined that the fire had been intentionally set after they detected gasoline behind the house. It is not disputed that the victims died by arson. The identity of the perpetrator was at issue.
While at the scene of the fire on the morning of March 24, 1999, April's friend, Rochelle Carr, informed Investigator Terrell Shaw that she had spoken with April on the telephone at approximately 1:30 a.m. During that conversation, April told Carr that defendant had followed her the previous day to the bank and to work. When April asked defendant why he was following her, he responded that he had nothing better to do.
Carr was also interviewed by Arson Investigator Albert Hood. She told him that April had stated that defendant had been threatening and stalking her. Carr also informed Hood that April had told her that defendant had followed her home the previous day and had told her that "if he couldn't have her, nobody could."
Hood also spoke with Sheritia Nicole Lyons at the scene. She informed him that, although defendant had cried on previous occasions when he and April had broken up, he did not cry that morning when he learned that April was dead. Lyons told Hood that she found defendant's behavior strange. Lyons also told Shaw that April's sister had accused defendant of stalking April. Lyons and LaReesa Tillese Linder asked Carr if defendant had been stalking April, and Carr responded, "No," but, "You know how Rodrick is." Linder then told Hood that April's sister had said that defendant was stalking April and that he had told her that he could not be without her.
It is unclear whether Hood communicated the information that he had learned to Shaw. Shaw instructed another officer to take defendant into custody. The parties agree that defendant was under arrest at that point. This case involves the legality of defendant's arrest and whether incriminating statements that he made following his arrest should have been suppressed.
Before trial, defendant moved to suppress his statements to police. The trial court denied his motion, finding that probable cause existed for his arrest. A jury convicted defendant of two counts of felony murder (arson), M.C.L. § 750.316. The Court of Appeals reversed defendant's convictions on the basis that defendant's arrest was not supported by probable cause. Consequently, the Court concluded, defendant's post-arrest statements should have been suppressed. This application for leave to appeal followed, raising in part the legality of defendant's arrest.

*69 II. Legal Background
Both the federal and Michigan constitutions protect against unreasonable seizures of a person. US Const., Am. IV; Const. 1963, art. 1, § 11; People v. Champion, 452 Mich. 92, 97, 549 N.W.2d 849 (1996); Gillespie, Michigan Criminal Law & Procedure (2d ed.), § 5:1, pp. 3-4. While proof beyond a reasonable doubt is required for a conviction, an arrest requires only reasonable or probable cause. Albright v. Oliver, 510 U.S. 266, 297, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994); People v. Sizemore, 132 Mich.App. 782, 788, 348 N.W.2d 28 (1984). In addition, M.C.L. § 764.15 provides:
(1) A peace officer, without a warrant, may arrest a person in any of the following situations:

* * *
(c) A felony in fact has been committed and the peace officer has reasonable cause to believe the person committed it.
Reasonable or probable cause to arrest exists "where the facts and circumstances within an officer's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." Champion, supra at 115, 549 N.W.2d 849, citing Brinegar v. United States, 338 U.S. 160, 175, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); see also Gillespie, supra at § 5:33, p. 70. In People v. Oliver, 417 Mich. 366, 374, 338 N.W.2d 167 (1983), this Court stated:
The first rule in determining whether an officer had probable cause to make an arrest is whether there are any facts which would lead a reasonable person to believe that the suspected person has committed a felony. Secondly, a police officer's belief that a defendant has committed a felony must be based on facts which are present at the moment of the arrest.
Thus, this Court laid down the following standard to be employed by Michigan appellate courts when applying these two rules:
"Therefore, in reviewing a claim that a police officer lacked probable cause to arrest, the reviewing court must determine whether facts available to the officer at the moment of arrest would justify a fair-minded person of average intelligence in believing that the suspected person had committed a felony. Each case must be analyzed in light of the particular facts confronting the arresting officer." [Citations omitted.]

III. Analysis

A. Probable Cause to Arrest for Murder and Arson
The collective information known by the officers before defendant's arrest justified a fair-minded person of average intelligence in believing that defendant had committed a crime. At the time of defendant's arrest, the officers were aware that defendant had been stalking April and had threatened her. Gasoline had been detected at the rear of the house. In addition, when told about April's death, defendant did not seem particularly upset. The trial court correctly concluded that, "piecing all of the evidence together," probable cause existed to support defendant's arrest. The evidence of the victim's death in a fiery blaze shortly after she had told a friend that defendant had been stalking and threatening her warrants a reasonable person to believe that defendant had murdered the victim.
This Court has recognized the collective-knowledge approach to assessing probable cause. This theory allows numerous police *70 officers to possess different information that in its totality constitutes probable cause. Gillespie, supra at § 5:36. In People v. Dixon, 392 Mich. 691, 696, 222 N.W.2d 749 (1974), two police officers stopped the defendant's car because of a suspected faulty muffler. When the defendant produced a driver's license, the officer observed a second driver's license in the defendant's wallet. Id. The officer radioed headquarters and was informed that the defendant's license had been suspended. Id. The officer then arrested the defendant for driving with a suspended license, a misdemeanor. Id.
The defendant challenged his warrantless arrest. Id. M.C.L. § 764.15 authorized the police officer to arrest the defendant without a warrant if a misdemeanor was committed in the officer's presence. Id. The defendant argued that his arrest was invalid because the officer did not learn though his own senses that the defendant was committing a misdemeanor. Rather, the officer learned of the misdemeanor through radio communications to headquarters. Id. This Court held that the requirement of the officer's presence could not be satisfied by using information that third persons had communicated to the officer. Id. at 697, 222 N.W.2d 749. This Court stated, however, that,
[a]nother police officer is not a third person within that policy. Courts in other jurisdictions have developed a "police team" qualification of the presence requirement, permitting officers who are working together on a case to combine their collective perceptions so that if the composite otherwise satisfies the presence requirement that requirement is deemed satisfied although the arresting officer does not himself witness all the elements of the offense. [Id. at 698, 222 N.W.2d 749.]
The collective-knowledge principle to support a finding of probable cause for a suspect's arrest has wide acceptance. See Whiteley v. Warden, Wyo State Penitentiary, 401 U.S. 560, 568, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971) (In finding probable cause for the defendant's arrest, "police were entitled to act on the strength of [a] radio bulletin," from other officers); United States v. Perkins, 994 F.2d 1184 (C.A.6, 1993) ("This court recognizes the general rule that `probable cause for arrest may emanate from collective police knowledge.....'"); United States v. Edwards, 885 F.2d 377, 383 (C.A.7, 1989) ("We need not decide whether either [officer] had sufficient knowledge alone to arrest Edwards because the concept of imputed knowledge means that [the officers] could rely upon the information they possessed as a team in executing the arrest of Edwards."); United States v. Lomas, 706 F.2d 886, 892 (C.A.9, 1983) ("An individual officer in a coordinated investigation need not have personal knowledge of all the relevant facts to effect an arrest. It is sufficient if the pool of objective data possessed by the group of agents acting in concert supplies the requisite probable cause."); Justus v. State, 438 So.2d 358, 363 (Fla., 1983) ("In deciding whether there was probable cause for the arrest, the trial court was authorized to consider all of the collective knowledge and information of all of the officers involved in the investigation"); see also 2 LaFave, Search & Seizure, § 3.5(c), p. 268 n. 75.
At the hearing on defendant's motion to suppress his statement to the police, defendant argued that no evidence existed that Shaw and Hood communicated to each other the information that they acquired from interviewing witnesses at the scene. Such a communication was not required. Under the collective-knowledge theory, the trial court properly considered the information that both officers possessed and found that the information, in its totality, *71 constituted probable cause for defendant's arrest. Therefore, the Court of Appeals erroneously concluded that defendant's arrest was not supported by probable cause.

B. Probable Cause to Arrest for Stalking
Even if the officers could not have arrested defendant for arson and murder, they could have properly arrested him for stalking based on his contact with April. The fact that the officers arrested defendant for murder and arson rather than stalking would not have rendered the arrest invalid.
In People v. Arterberry, 431 Mich. 381, 382-383, 429 N.W.2d 574 (1988), the police discovered a locked toolbox inside a dwelling while executing a search warrant. The officers recovered controlled substances from the box after forcing it open. Id. at 383, 429 N.W.2d 574. They located the key to the toolbox in the possession of the defendant, one of seven persons present in the dwelling at the time of the search. Id. The defendant challenged the search of his person for the key as exceeding the scope of the search warrant. Id. This Court held that upon discovering the controlled substances, the police could have properly arrested all seven occupants for loitering in a place of illegal occupation or business.[2]Id. Because the officers could have arrested the defendant and the other occupants for the above offense, they could have been searched incident to arrest, and defendant's search, uncovering the key, would have been proper. Id. at 384, 429 N.W.2d 574. This Court explained:
To be sure, the officers did not assert and may not have had in mind the offense of loitering in a place of illegal occupation or business when they searched Arterberry and the other occupants. The United States Supreme Court has said, however:
"[T]he fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action. [Scott v. United States, 436 U.S. 128, 138, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978).]" Therefore, because the officers could have arrested the defendant for loitering, thereby discovering the key during a search incident to his arrest, the search was valid. Id. at 384-385, 429 N.W.2d 574. Further, it is of no moment that the officers may not have contemplated the defendant's arrest for loitering at the time of the search. Id. at 384, 429 N.W.2d 574.[3]
The circumstances here, viewed objectively, supported defendant's arrest for stalking. It is immaterial whether the officers *72 were aware that they could have arrested defendant for stalking at the time of his arrest for arson and murder. Id. Therefore, probable cause existed to support defendant's arrest, even if murder and arson were not appropriate bases of his arrest. Accordingly, the Court of Appeals erroneously determined that defendant's arrest was not supported by probable cause.
WEAVER, J., would grant leave to appeal.
NOTES
[1] Contrary to Justice KELLY'S concurring statement, the prosecutor argued in his application for leave to appeal on pp. 18-19 that defendant's arrest was lawful.
[2] MCL 750.167(j).
[3] See also People v. Estabrooks, 175 Mich. App. 532, 538-539, 438 N.W.2d 327 (1989) (Relying on Arterberry, supra and Scott, supra, to hold that the police officer did not need to know exactly what crime was being committed or with which crime defendant would be charged, but only that the circumstances justified the stop.); People v. Cook, 153 Mich.App. 89, 91-92, 395 N.W.2d 16 (1986) ("The United States Supreme Court has ruled that challenged searches should be examined under a standard of objective reasonableness without regard to the underlying intent or motivation of the officers involved. Scott, supra at 138, 98 S.Ct. 1717. Since, viewed objectively, the officers had probable cause to arrest defendant for delivery of heroin, their subjective belief that they should detain him pursuant to the search warrant does not render the arrest invalid."); United States v. McCoy, 517 F.2d 41, 43 n. 1 (C.A.7, 1975) ("The fact that appellant was arrested for the commission of a federal offense is not controlling the validity of the arrest must be tested by objective standards rather than the subjective intent of the arresting officer, and as long as the facts establish a valid basis for appellant's arrest, that arrest is not rendered invalid simply because the officer may have misapprehended the correct legal basis for his action."); United States v. Dunavan, 485 F.2d 201, 205 (C.A.6, 1973) ("[I]n dealing with a Fourth Amendment issue, the validity of an arrest is to be judged by whether the arresting officers actually had probable cause for the arrest rather than by whether the officers gave the arrested person the right reason."); Klingler v. United States, 409 F.2d 299, 304-305 (C.A.8, 1969) ("Because probable cause for an arrest is determined by objective facts, it is immaterial that [the officer], at the hearing on the motion to suppress, testified that he did not think that he had `enough facts' upon which to arrest Klingler for armed robbery. His subjective opinion is not material.... Objectively, the facts known to [the officer] prior to the arrest and search met the standard of probable cause. Notwithstanding the officer's mistaken statement of grounds, the existence of probable cause for a robbery arrest prevents the vagrancy arrest from being considered pretextual.").