PEOPLE v CHAPMAN

Docket No. 75751. Argued January 14, 1986 (Calendar No. 20).
Decided June 6, 1986.

Weyman D. Chapman was charged in the 36th District Court
with two counts of possession of a controlled substance. The
court, Wendy M. Baxter, J., suppressed evidence of the con-
trolled substances and dismissed the charges, holding that the
police officer who had arrested the defendant after a stop for a
motor vehicle violation, during which it was discovered that
there was an outstanding traffic warrant for the defendant's
arrest and that the defendant's license had been suspended,
should have obtained a search warrant before conducting a full
search of the defendant. The Recorder's Court of Detroit, Sam-
uel Gardner, J., affirmed on the basis of Michigan law. The
Court of Appeals, V. J. BRENNAN, P.J., and T. M. BURNS and
FORSTER, JJ., affirmed in an opinion per curiam, holding that
the search had violated the defendant's rights under the in-
terim bail statute (Docket No. 79478). Neither party claimed
that the search was violative of the search and seizure provi-
sions of the state or federal constitutions. The people appeal.

In an opinion by Justice RILEY, joined by Chief Justice
WILLIAMS and Justices LEVIN, BRICKLEY, CAVANAGH, and
ARCHER, the Supreme Court held:

The release of misdemeanor prisoners act does not limit the
permissible scope of searches incident to a full custodial arrest.
The interim bail provisions of the act and *People v Dixon,* 392
Mich 691 (1974), may not be judicially extended to limit the
constitutionally permissible scope of searches incident to arrest.

1. A search incident to an arrest requires no additional

REFERENCES

Am Jur 2d, Evidence §§ 425-427

Am Jur 2d, Searches and Seizures §§ 37-40

Lawfulness of warrantless search of purse or wallet of person
arrested or suspected of crime. 29 ALR4th 771.

Violation of federal constitutional rule (Mapp v Ohio) excluding
evidence obtained through unreasonable search and seizure, as
constituting reversible or harmless error. 30 ALR3d 128.

Admissibility, in civil cases, of evidence obtained by unlawful
search and seizure. 5 ALR3d 670.

justification under the Fourth Amendment of the United States Constitution. Neither the search and seizure provision of the Michigan Constitution nor the interim bail provisions of the release of misdemeanor prisoners act afford greater rights to support suppression of evidence than does the Fourth Amendment.

2. The interim bail provisions of the act do not purport to confer rights against searches and seizures. In determining whether evidence should be suppressed under the act in a particular case, the question is not whether the Michigan Constitution should be construed to afford greater protection against searches and seizures than is required under federal law, but whether the act has been violated. In this case, the search of the defendant was incident to a lawful custodial arrest, and did not conflict with the legislative purpose of the act.

Reversed and remanded.

Justice BOYLE agreed that *People v Dixon* does not apply to a search incident to a custodial arrest.

142 Mich App 179; 369 NW2d 204 (1984) reversed and remanded.

### OPINION OF THE COURT

1. SEARCHES AND SEIZURES — INCIDENT TO ARREST — INTERIM BAIL STATUTE — SUPPRESSION OF EVIDENCE.

The release of misdemeanor prisoners act does not limit the permissible scope of searches incident to a full custodial arrest; the interim bail provisions of the act and case law may not be judicially extended to limit the constitutionally permissible scope of searches incident to arrest (US Const, Am IV; Const 1963, art 1, § 11; MCL 780.581 *et seq.;* MSA 28.872[1] *et seq.*).

2. SEARCHES AND SEIZURES — INCIDENT TO ARREST — INTERIM BAIL STATUTE — SUPPRESSION OF EVIDENCE.

Neither the Michigan Constitution nor the interim bail provisions of the release of misdemeanor prisoners act afford greater rights to support suppression of evidence than does the Fourth Amendment; in determining whether evidence should be suppressed under the act, the question is not whether the Michigan Constitution should be construed to afford greater protection against searches and seizures than is required under federal law, but whether the act has been violated (US Const, Am IV; Const 1963, art 1, § 11; MCL 780.581 *et seq.;* MSA 28.872[1] *et seq.*).

*Frank J. Kelley,* Attorney General, *Louis J.*

*Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Deputy Chief, Civil and Appeals, and *Andrea L. Solak,* Principal Attorney, Appeals, for the people.

*Mark R. Hall* for the defendant.

RILEY, J. Defendant was charged with two counts of possession of a controlled substance. MCL 333.7403(2)(b); MSA 14.15(7403)(2)(b). Evidence of the controlled substances was suppressed in district court, and the charges were dismissed. The Recorder's Court of Detroit upheld the ruling, and the Court of Appeals affirmed. We granted the prosecution's application for leave to appeal to consider whether the interim bail provisions of the release of misdemeanor prisoners act, 1961 PA 44, MCL 780.581 *et seq.;* MSA 28.872(1) *et seq.,* statutorily circumscribe the otherwise constitutionally permissible scope of searches and seizures without warrants "incident to a lawful arrest" to a limited pat-down search or "protective frisk" (less than a full search), thereby affording greater individual rights against search and seizure than both the Fourth Amendment and the Michigan Constitution's search and seizure provision.[1] We hold that the release of misdemeanor prisoners act does not limit the permissible scope of searches incident to a full custodial arrest, and, therefore, reverse the decision of the Court of Appeals.

I

Defendant's vehicle was stopped for an equipment violation (a cracked windshield). A check disclosed that defendant was wanted on an outstanding traffic warrant and that his license had

[1] US Const, Am IV; Const 1963, art 1, § 11.

been suspended. The officer placed defendant under arrest and proceeded to conduct a pat-down search. During the search a vial was discovered on the left waistband hip area of defendant's trousers. The officer seized the vial which turned out to be a nontransparent brown pill bottle with a white cap, and was labeled with defendant's name and a prescription for "hydroton." The officer opened the vial and discovered that it contained controlled substances.[2]

At the preliminary examination the defense objected to the prosecution's motion to bind the defendant over for trial on the charges and moved for dismissal, arguing that the controlled substances were discovered as a result of an illegal search. Citing *People v Dixon*, 392 Mich 691; 222 NW2d 749 (1974), the defense argued that the search violated defendant's right to post bond, and that the police are limited to a pat-down search for offensive weapons during an arrest for a misdemeanor until the arrested person is provided an opportunity to post bail under the interim bail statute, MCL 780.581; MSA 28.872(1). Alternatively, the defense argued that no exigent circumstances existed to justify the search of the vial without a warrant, and that the officer lacked probable cause to search.

The district court ruled the search of the vial illegal on the ground that the officer lacked probable cause to search, that he would have had an opportunity to obtain a search warrant, and that there were no exigent circumstances to warrant the search. Evidence of the controlled substances was suppressed, and the charges were dismissed.

The district court ruling was affirmed on appeal in the Recorder's Court. Although it is unclear

_____
[2] The vial contained fourteen pills of codeine and three pills of diazepam (Valium).

whether the district court ruling was based on federal constitutional law, state constitutional or statutory law, or a combination thereof, the Recorder's Court, in affirming the ruling, expressly limited its decision to Michigan law:

> [A]ccording to Michigan law there was no probable cause or exigent circumstances which gave the officer a reason to open the vial and examine its contents.

After the Court of Appeals denied the prosecution's application for leave to appeal, this Court remanded the case for consideration as on leave granted. 419 Mich 891 (1984). In the Court of Appeals, the prosecution argued that the Recorder's Court erred by substituting a state basis for holding the search illegal in order to avoid the force of federal law which permits a full-blown search incident to an arrest and does not require an independent probable cause to search or a showing of exigency.[3] The prosecution argued, furthermore, that *People v Dixon, supra,* is not applicable in the instant case because the search which was found to have violated Michigan's interim bail statute in *Dixon* was an inventory search conducted at the police station at a time when the defendant was entitled to release under the statute, rather than being incarcerated.[4]

---

[3] See *New York v Belton,* 453 US 454; 101 S Ct 2860; 69 L Ed 2d 768 (1981); *Gustafson v Florida,* 414 US 260; 94 S Ct 488; 38 L Ed 2d 456 (1973); *United States v Robinson,* 414 US 218; 94 S Ct 467; 38 L Ed 2d 427 (1973).

[4] The prosecution argued first that the search in the instant case was conducted incident to arrest and, thus, cannot be characterized as an "inventory search." The prosecution's second argument was that, because defendant was arrested pursuant to a valid warrant, he would not have been entitled to immediate bail under the statute, MCL 780.582; MSA 28.872(2), and, therefore, could have justifiably been incarcerated until an appropriate magistrate would have been available.

The Court of Appeals rejected the prosecution's arguments and affirmed the decisions of the trial courts, holding that the evidence was properly suppressed because it was discovered in violation of the defendant's statutory rights under the interim bail statute, MCL 780.581; MSA 28.872(1). *People v Chapman,* 142 Mich App 179, 182; 369 NW2d 204 (1984).[5]

II

The parties seem to agree that the search which revealed the controlled substances in the present case was not violative of the search and seizure provisions of either the Fourth Amendment or the Michigan Constitution.[6]

It is axiomatic that the constitutional right against unreasonable searches and seizures protects people and not things; it is the individual's right to liberty and privacy that is protected. The exception to the search warrant requirement of the Fourth Amendment for searches conducted incident to a lawful custodial arrest, was addressed by the United States Supreme Court in *United States v Robinson,* 414 US 218; 94 S Ct 467; 38 L Ed 2d 427 (1973).[7] The Court, in *Robinson,* explained that "[i]t is the fact of the lawful arrest which establishes the authority to search," and held that "in the case of a lawful custodial arrest

---

[5] The Court of Appeals did not discuss, specifically, what statutory rights were afforded defendant under the statute, nor how they had been violated by the search.

[6] US Const, Am IV; Const 1963, art 1, § 11.

[7] In *Robinson,* the defendant was arrested for a traffic offense, taken into custody, and searched. During the search, the arresting officer uncovered a crumpled cigarette pack which, upon examination, was discovered to contain heroin. The Court held that the search of the cigarette pack was not violative of the defendant's Fourth Amendment protections because it was conducted incident to the valid custodial arrest.

a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment." *Id.,* 235. The Court reasoned that because the lawful arrest "is a reasonable intrusion under the Fourth Amendment, . . . a search incident to the arrest requires no additional justification." *Id.* The Court emphasized that although "the authority to search [in such situations is] based upon the need to disarm and to discover evidence, [it] does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect." *Id.*

In *Robinson,* the Court held that the permissible scope of a search incident to a lawful custodial arrest extends to containers found within the "control area" of the arrestee. See also *New York v Belton,* 453 US 454; 101 S Ct 2860; 69 L Ed 2d 768 (1981); *Gustafson v Florida,* 414 US 260; 94 S Ct 488; 38 L Ed 2d 456 (1973).[8] In the instant case, no

[8] In *New York v Belton,* the Court addressed the scope of searches incident to arrest under the *Robinson* doctrine:

> Accordingly, we hold that when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile.
>
> It follows from this conclusion that the police may also examine the contents of any containers found within the passenger compartment, for if the passenger compartment is within reach of the arrestee, so also will containers in it be within his reach. [Citation omitted.] Such a container may, of course, be searched whether it is open or closed, since the justification for the search is not that the arrestee has no privacy interest in the container, but that the lawful custodial arrest justifies the infringement of any privacy interest the arrestee may have.
>
>         *  *  *
>
> It is true, of course, that these containers will sometimes be such that they could hold neither a weapon nor evidence of the criminal conduct for which the suspect was arrested. However,

additional probable cause, or exigent circumstance, was necessary to justify the search of the vial.

The search and seizure provision of the Michigan Constitution, Const 1963, art 1, § 11, affords defendant no greater rights upon which to support the suppression than the Fourth Amendment. Michigan's search and seizure provision includes an antiexclusionary proviso which precludes suppressing certain classifications of evidence, enumerated in the proviso.[9] Michigan, of course, is bound by the search and seizure provisions of the Fourth Amendment through the Due Process Clause of the Fourteenth Amendment and the federal exclusionary rule mandated by it.[10] This Court has held, therefore, that art 1, § 11 may not be interpreted as affording broader protection than

in *United States v Robinson,* the Court rejected the argument that such a container—there a "crumpled up cigarette package"—located during a search of Robinson incident to his arrest could not be searched: "The authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect. A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification." 414 US 235. [453 US 460-461.]

[9] Const 1963, art 1, § 11, provides:

The person, houses, papers and possessions of every person shall be secure from unreasonable searches and seizures. No warrant to search any place or to seize any person or things shall issue without describing them, nor without probable cause, supported by oath or affirmation. *The provisions of this section shall not be construed to bar from evidence in any criminal proceeding any narcotic drug, firearm, bomb, explosive or any other dangerous weapon, seized by a peace officer outside the curtilage of any dwelling house in this state.* [Emphasis added.]

[10] *Mapp v Ohio,* 367 US 643; 81 S Ct 1684; 6 L Ed 2d 1081 (1961); *Wolf v Colorado,* 338 US 25; 69 S Ct 1359; 93 L Ed 1782 (1949).

the Fourth Amendment, at least inasmuch as the remedy sought is exclusion of evidence enumerated in the proviso. *People v Nash,* 418 Mich 196; 341 NW2d 439 (1983); *People v Moore,* 391 Mich 426; 216 NW2d 770 (1974). The Michigan Constitution, therefore, does not afford an additional basis upon which to support the suppression in the instant case.

Thus, the only remaining issue would seem to be whether the interim bail statute prohibited the search in question and required suppression of the evidence. Yet, both the prosecution and defendant have sought to focus their arguments, and our attention, on a number of other issues. While these issues are not dispositive, we are persuaded that the reason for their presence is noteworthy, and, therefore, warrants some mention.

In its written opinion affirming the district court's ruling, the Recorder's Court expressed its disapproval of the United States Supreme Court's decisions concerning the Fourth Amendment. The court suggested that greater protection may be afforded under the search and seizure provision of the Michigan Constitution, and expressed its opinion concerning the need to do so. Quoting Const 1963, art 1, § 11 (but omitting the antiexclusionary proviso), the court stated that "state courts have the duty to halt the steady erosion" by "the present membership of the United States Supreme Court" of the protections of the Fourth Amendment. Recorder's Court opinion, p 2, quoting *People v Smith,* 118 Mich App 366, 377; 325 NW2d 429 (1982) (MAHER, J., concurring).

The court then embarked on an analysis of the independent state grounds doctrine concerning the scope of federal appellate jurisdiction, citing *Michigan v Long,* 463 US 1032; 103 S Ct 3469; 77 L Ed 2d 1201 (1983), and its applicability in the present

case. The court did not refer to the interim bail statute (although it did cite *Dixon,* during its discussion of federal jurisdiction); nor did it state, with any degree of specificity, which independent state ground justified the district court's ruling.

In the Court of Appeals and in this Court, both the prosecution and the defendant have devoted considerable effort to arguing the following issues:

> (1) Whether a reviewing court may substitute its judgment for that of the lower court in determining the legal basis upon which a decision rests in order to avoid the binding force of federal law.
>
> (2) Whether the interim bail statute provides a sufficient state ground upon which to base a higher Michigan standard for search and seizure analysis, and to prevent federal review.

The Court of Appeals correctly decided the first issue in the defendant's favor. 142 Mich App 181. To suggest that a reviewing court is bound by the lower court's decisional basis and, therefore, is precluded from affirming a correct decision, although reached for the wrong reason, is entirely without logic. The second issue, inasmuch as it concerns federal appellate jurisdiction, is irrelevant to the substantive issue presented in this case.

The foregoing discussion is helpful, nevertheless, in defining the limited scope of the issue we consider today. In this case, we do not consider whether the Michigan Constitution *should* be construed to afford greater protection against search and seizure and as requiring the exclusion of evidence which would not be required by the Fourth Amendment. The people of this state have precluded us from considering that difficult question by adopting art 1, § 11 of the 1963 Constitution, which expressly precludes application of the

exclusionary rule to suppress evidence of "any narcotic drug . . . seized by a peace officer outside the curtilage of any dwelling house." The courts of this state are obligated to uphold the federal and Michigan Constitutions, and to apply the statutory laws of this state to further the intent expressed therein.

With the foregoing in mind we turn to the dispositive issue, which, we note, has received very little attention or analysis throughout the procedural history of this case.

III

The Court of Appeals based its decision to affirm upon the interim bail statute and this Court's decision in *People v Dixon.* Citing *Dixon,* the Court stated that "when a defendant is entitled to immediate bond under the interim bail statute, MCL 780.581; MSA 28.872(1), police officers do not have the right to conduct an inventory search . . . ." 142 Mich App 181-182.

In *Dixon,* the defendant was lawfully arrested without a warrant for a misdemeanor (the offense was committed in the officer's presence).[11] Dixon was searched at the scene of the arrest and no incriminating evidence was discovered. Upon arrival at the jail, Dixon was detained in a small room where a second search was conducted; Dixon

---

[11] In *Dixon,* the Court retained the common-law presence requirement for misdemeanor arrests without warrants. That requirement has been partially abrogated by legislative act in limited situations involving certain domestic disturbances. 1978 PA 316, MCL 764.15a, 764.15b; MSA 28.874(1), 28.874(2), as amended by 1980 PA 471, § 1, effective March 31, 1981, and 1983 PA 230, § 1, effective November 28, 1983.

Dixon was arrested for operating a motor vehicle with a suspended license. MCL 257.904; MSA 9.2604. It should be noted that the vast majority of minor traffic offenses are civil infractions, in Michigan, for which an arrest may not be made. See MCL 257.6a; MSA 9.1806(1).

was directed to remove his sweater and an investigation of the sweater's pocket revealed several small packets containing heroin.

The Court reversed Dixon's conviction because it found that Dixon had a right to immediate bail, pursuant to the interim bail statute, and could not have been incarcerated before being given an opportunity to exercise that right.[12] The Court distinguished the search at the jail from a search "incident to arrest," and said that the search which revealed the heroin could not have been defended as an "inventory search" unless the authorities could have justifiably incarcerated Dixon.[13]

The Court explained that, under the statute, a person arrested for a misdemeanor, without a warrant, must be taken without unnecessary delay before the most convenient magistrate to answer the complaint, and, if no magistrate is available, the arrested person is entitled (with exceptions not applicable in *Dixon*) to recognize to the direct supervisor of the arresting officer or department (to enter into a recognizance by leaving a sum of money to guarantee an appearance).[14] The Court

[12] The Court noted that when Dixon was arrested he had $86.36 which, although less than the statutory maximum ($100), was more than the amount determined to be reasonable, as interim bail, for his offense by the district court ($35). The Court reasoned, therefore, that had the officers informed Dixon of his statutory right to be released upon posting bail, and had they set bail at $35, "[t]here is every reason to believe . . . Dixon would have paid that sum." *Dixon,* 705.

[13] The *Dixon* Court distinguished *Robinson, supra,* and the authority to search incident to arrest, from the search which revealed the incriminating evidence in *Dixon.* One commentator has noted that the *Dixon* Court "follow[ed] *Robinson* but nevertheless [found] a basis to suppress [the] evidence." Grano, *Criminal Procedure, Annual Survey of Michigan Law,* 23 Wayne L R 517, 537, n 102 (1977).

[14] At the time *Dixon* was decided, the statute had been amended, adding the sheriff and deputy in charge of the county jail, if the arrested person is lodged in the county jail, as persons to whom a person arrested for a misdemeanor without a warrant may recognize.

Section 1(2) of the release of misdemeanor prisoners act was subsequently amended by 1983 PA 61, § 1, effective March 29, 1984, and now reads:

concluded that to assure full enforcement of the statute, and to further the legislative intent expressed therein, the exclusionary rule would be applicable to any evidence gained in derogation of the statute.[15] In *Dixon,* the Court predicated its

---

(2) If *a* magistrate is *not* available or immediate trial cannot be had, the person arrested may *leave with the arresting officer or* the direct supervisor of the arresting officer or department, or *with* the sheriff or *a* deputy in charge of the county jail if the person arrested is lodged in the county jail, *as a bond to guarantee* his *or her* appearance, *a* sum *of money, as determined by whoever accepts the bond, not to exceed the amount of the maximum possible fine but not less than 20% [percent] of the amount of the minimum possible fine that may be imposed for the offense for which the person was arrested. The person shall be given a receipt as provided in section 3.*

Section 1(3), (4) of the act was also amended and now provides:

(3) If, in the opinion of the arresting officer or department, the arrested person is under the influence of *intoxicating* liquor or *a controlled substance, or a combination of intoxicating liquor and a controlled substance,* is wanted by police authorities to answer to another charge, *is unable to establish or demonstrate his or her identity,* or it is otherwise unsafe to release him *or her,* the arrested person shall be held *at the place specified in subsection (4)* until he *or she* is in a proper condition to be released, or until the next session of court.
(4) *If the person is arrested in a political subdivision which has a holding cell, holding center, or lockup, the person shall be held in that holding cell, holding center, or lockup. If the person is arrested in a political subdivision which does not have a holding cell, holding center, or lockup, the person shall be held in the county jail. For purposes of this subsection, "political subdivision" means a city, village, or township.*

[15] The Court stated that the purpose of the statute is "avoiding unnecessary incarceration of minor offenders." *Dixon,* 703.
The rationale for applying the exclusionary rule, in *Dixon,* is more limited than the rationale for the general exclusionary rule remedy as it relates to the purpose of deterring violations of the constitutionally guaranteed liberty and privacy protections embodied in the search and seizure provisions. Applying the exclusionary rule to suppress evidence of a *major* offense is not directly congruent to the statutory purpose of avoiding "unnecessary incarceration of *minor* offenders." Because the purpose of the statute is specifically related to "unnecessary incarceration" and not searches and seizures generally, applying the exclusionary remedy may seem misplaced or, at least, less clearly related to the stated statutory purpose.

decision on distinguishing the station house search from the search conducted contemporaneously with the defendant's arrest, and upon the defendant's right to immediate bail; Dixon could not have been incarcerated, and, therefore, should not have been unnecessarily detained and subjected to an "inventory search" at the jail.

The defendant successfully argued in the trial courts and Court of Appeals that *Dixon* and the release of misdemeanor prisoners act should be extended to limit the permissible scope of searches incident to arrest for misdemeanors, generally, to a pat-down search (less than a full search) analogous to the limited permissible scope of a search without a warrant during a *Terry* stop, a "protective frisk," which requires less than probable cause to arrest. See *Terry v Ohio,* 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968).[16]

An additional analytical step is necessary, however, if the *Dixon* Court's reasoning is to be supported. In *Dixon,* the Court inferred a duty, under the statute, to inform arrested persons entitled to immediate bail, after processing, of that right. The purpose of applying the exclusionary rule in *Dixon* was to encourage arresting officers to inform arrested persons who are entitled to immediate bail of that right and, thus, to deter arresting officers and others from failing to do so.

[16] In *People v Garcia,* 81 Mich App 260; 265 NW2d 115 (1978), the Court of Appeals, over the dissent of GILLIS, J., extended *Dixon* to invalidate a search incident to arrest. Subsequent Court of Appeals decisions have followed both the majority and dissenting opinions in *Garcia.* See *People v Siegel,* 95 Mich App 594; 291 NW2d 134 (1980), and *People v Cavitt,* 86 Mich App 59; 272 NW2d 196 (1978), which follow the majority opinion in *Garcia.* See *People v LeBeuf,* 93 Mich App 421; 286 NW2d 888 (1979), and *People v Ragland,* 149 Mich App 277; 385 NW2d 772 (1986), which follow the dissenting opinion in *Garcia.*

Commentators have criticized the Court of Appeals decisions extending *Dixon* and the release of misdemeanor prisoners act to invalidate searches incident to arrest. See Baughman, *Criminal Procedure, Annual Survey of Michigan Law,* 27 Wayne L R 657, 713 (1981), in which the author refers to the reasoning in *Siegel, supra,* as "[p]erhaps the most tortured reasoning of the survey period"; Baughman & Corrigan, *Criminal Procedure, Annual Survey of Michigan Law,* 26 Wayne L R 579, 593 (1980), in which the authors make the

The prosecution argues that *Dixon* should not have been extended to limit the scope of searches incident to arrest, because the *Dixon* Court expressly distinguished the search found in that case to have been in derogation of the interim bail statute from the search which was conducted incident to Dixon's arrest.[17]

The defendant urges us to extend *Dixon* beyond its own limited reasoning, however, because the interim bail statute provides an adequate legal basis by which to impose greater restrictions on law enforcement than are imposed by the search and seizure provision of the Michigan Constitution. Without considering whether the antiexclusionary proviso of art 1, § 11 precludes the Legislature from affording additional search and seizure protections,[18] we are persuaded that *Dixon* must be limited to cases in which a person's statutory right to immediate bail has been violated.

*Dixon,* like the present case, involved the application of the interim bail provisions of the release of misdemeanor prisoners act. In deciding the issue presented, we note that our objective is to apply the statutes here in question to further the expressed legislative intent. The act does not purport to confer rights against searches and seizures; nothing in any of its provisions even alludes to search and seizure or an exclusionary rule.

The purpose of the general exclusionary rule, within the constitutional contexts of the Fourth Amendment and art 1, § 11 is to encourage respect for the constitutional right against "unreasonable"

following statement, referring specifically to *Cavitt, supra,* but also including *Garcia* and *Dixon:* "Since these cases were based on the seizure of narcotics 'outside the curtilage' of the home, however, they appear highly suspect." (Citing Const 1963, art 1, § 11.)

[17] See *Dixon, supra,* 706-707.

[18] See *id.,* 707 (LEVIN, J., separate opinion).

search and seizure. The purpose of the more limited exclusionary rule, as applied to evidence discovered in violation of the interim bail statute, is to encourage respect for, and compliance with, that statute. We are persuaded that this distinction is necessary. Therefore, in determining whether the interim bail statute's exclusionary rule requires the suppression of evidence in a given situation, the question is not whether Michigan *should* afford greater protection against search and seizure than is federally required; rather, the determinative question is whether the statute has been violated.[19]

The search of defendant and the vial, in the instant case, was a search incident to a lawful custodial arrest. The legislative policy underlying the interim bail statute—avoiding the "unwarranted and unnecessary inconvenience, embarrassment and risk attendant *incarceration* for a minor traffic offense"—is not undermined by the exception to the search warrant requirement for searches conducted incident to a lawful custodial arrest. The constitutional doctrine allowing such searches does not conflict with the legislative purpose embodied in that statute.

We conclude, therefore, that the interim bail provisions of the release of misdemeanor prisoners act, and this Court's decision in *People v Dixon,* may not be judicially extended to limit the constitutionally permissible scope of searches incident to arrest.

---

[19] In *Dixon* the Court held that arrested persons who are entitled to immediate bail under the statute must be informed of that right. The conduct found to have been in derogation of the statute in *Dixon* was the failure of the arresting officer or his supervisors to inform Dixon of his right to post bail after processing and instead unnecessarily detaining him and conducting a second search. The rationale for applying the exclusionary rule remedy in *Dixon* was that it would encourage arresting officers to inform arrested persons who are entitled to immediate bail after processing of that right and, conversely, to deter arresting officers and others from failing to do so.

We reverse the decision of the Court of Appeals and remand this cause to the district court for plenary consideration.

WILLIAMS, C.J., and LEVIN, BRICKLEY, CAVANAGH, and ARCHER, JJ., concurred with RILEY, J.

BOYLE, J. I agree *People v Dixon,* 392 Mich 691; 222 NW2d 749 (1974), does not apply to a search incident to a custodial arrest. *United States v Robinson,* 414 US 218; 94 S Ct 467; 38 L Ed 2d 427 (1973), and *Gustafson v Florida,* 414 US 260; 94 S Ct 488; 38 L Ed 2d 456 (1973).